IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BILLY DON ROBERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:13-CV-197 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO AFFIRM THE DECISION OF THE COMMISSIONER**

Plaintiff BILLY DON ROBERSON brings this cause of action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security (Commissioner), denying plaintiff's applications for disability benefits and supplemental security income benefits (SSI). For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
PROCEEDINGS

On January 15, 2011, plaintiff Billy Don Roberson applied for disability insurance benefits and supplemental security income benefits alleging a disability onset date of October 1, 2008. (Tr. 133, 114). The Commissioner denied benefits initially on June 24, 2011 and upon reconsideration

on September 9, 2011. Upon plaintiff's request, a video hearing was held before an Administrative Law Judge (ALJ) on March 23, 2012. (Tr. 26). On the date of the hearing, plaintiff was 49 years, 3 months old and had a General Educational Development (GED) high school equivalent education. (Tr. 31, 144). He had medium level past relevant work as a truck driver and trailer mechanic. (Tr. 47, 184). On August 2, 2012, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 10-25). Following plaintiff's unsuccessful administrative appeal of the ALJ's decision, plaintiff sought federal judicial review.

In reaching his decision, the ALJ followed the five-step sequential process in 20 C.F.R. §§ 404.1520(a) and 416.920(a). At step one, the ALJ determined plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 15). At step two, the ALJ found plaintiff's bilateral total knee replacements, chronic obstructive pulmonary disorder ("COPD"), coronary artery disease with stenting, hypertension and obesity were severe impairments. (*Id.*). At step three, the ALJ concluded plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15-16). The ALJ specifically found plaintiff did not have an inability to ambulate effectively as required by section 1.02 A; his pulmonary function testing did not meet the values required by section 3.02; plaintiff did not have the requisite narrowing of a non-bypassed artery required by section 4.04; and his obesity, in combination with the other impairments, did not meet or equal a listing. (Tr. 16).

After reviewing the medical record and discrediting plaintiff's claims in large part, the ALJ concluded plaintiff retained the residual functional capacity (RFC) to perform light work with

additional limitations, including the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. (*Id.*). Furthermore, the ALJ found plaintiff required the option to sit or stand; could occasionally stoop, kneel, crouch, and crawl; could not climb ladders, ropes, or scaffolds; required an indoor, temperature-controlled work environment; could have no concentrated exposure to dust, fumes, or chemicals; and could not work around dangerous moving machinery or at unprotected heights. (*Id.*).

At step four, the ALJ found plaintiff could not return to his past relevant work as a truck driver or as a trailer mechanic. At step five, based on the RFC determination and the vocational expert's testimony, the ALJ found plaintiff was capable of performing other jobs existing in significant numbers in the national economy, including assembler, inspector, and hand packager. (Tr. 20). Accordingly, the ALJ found plaintiff was not under a disability at any time between October 1, 2008, the alleged onset date, and August 2, 2012, the date of the decision.

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings, and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, the following elements must be weighed: (1) objective medical facts;

(2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

III.
ISSUES

The ALJ found plaintiff not disabled at Step Five of the five-step sequential analysis. Consequently, the court's review is limited to whether there was substantial evidence in the record, taken as a whole, to support the finding that plaintiff had the ability to perform other work that exists in significant numbers in the regional and national economies, and whether proper legal standards were applied in making this determination. Plaintiff presents the following issues for review:

1. Whether medical record evidence establishes plaintiff is unable to perform the amount of standing/walking associated with light work.

2. Whether the ALJ's RFC finding that plaintiff must alternate between sitting

and standing failed to follow agency policy in that the ALJ failed to enumerate the amount of time plaintiff must stand before he must sit, *etc*.

3. Whether the ALJ erred when he failed to consider plaintiff's borderline age situation in finding that plaintiff could perform light work with a sit/stand option, because a finding of "disabled" would have been directed if plaintiff had been limited to sedentary work and the ALJ had considered plaintiff's age as "closely approaching advanced age" instead of a "younger individual age 45-49."

4. Whether the ALJ erred when he failed to inquire of the vocational expert whether her testimony conflicted with the Dictionary of Occupational Titles (DOT).

(*See* Pl.'s Br. at 4).

IV.
MERITS

*A. ALJ's RFC Determination*

Plaintiff first challenges the ALJ's determination that he is capable of performing light-level work with a sit/stand option. Plaintiff contends the determination is not supported by the medical evidence of record because the evidence "establishes his inability to stand or walk most of the day." (Pl.'s Br. at 8). Plaintiff further contends the ALJ's reliance on the non-examining agency medical consultant was error. Plaintiff points out the agency doctor's evaluation was rendered June 23, 2011 and does not take into account the 8-month period of time before plaintiff started treatment for his right knee. Specifically, plaintiff emphasizes the agency medical opinion did not consider over 200 pages of medical records generated after June 2011. Plaintiff asserts this was reversible error because the ALJ must have based his RFC decision on his own analysis of these medical records.

The Commissioner responds that plaintiff's reliance on any medical records dated prior to plaintiff's left knee replacement is not determinative because plaintiff ignores the May 16, 2011

opinion of plaintiff's treating physician that plaintiff's post-op recovery of his left knee replacement was successful and that plaintiff was released from orthopedic care. Further, in February 2012, plaintiff's doctor documented that plaintiff said his left knee was much better. The Commissioner then points out that plaintiff presents no medical evidence *after* his left knee replacement establishing his left knee replacement prevents him from performing the reduced range of light work. The Commissioner argues the "remainder" of the 200 pages referenced by plaintiff is merely cumulative of plaintiff's complaints. Noting there is a lack of physician-assessed limitations after June of 2011, the Commissioner concludes there is substantial evidence in the record supporting the ALJ's determination.

In reaching his RFC determination the ALJ discussed plaintiff's testimony and summarized that testimony as follows: Plaintiff complained he cannot work due to heart problems and knee pain. (Tr. 17). He further stated he underwent stent replacement in 2006, and again in 2010, takes blood pressure medication and uses an inhaler for COPD and emphsyma; however, he testified that he continues to have shortness of breath and dizziness when he stands up or showers. (*Id*.). Plaintiff further testified his left knee was replaced but he now has right knee pain, continues to walk with a cane, and experiences pain from arthritis in his hands but cannot take prescription medication for the pain because it would interfere with his blood pressure medication. (*Id.).* He does not sleep more than four hours each night due to pain, naps frequently during the day*,* and testified that he cannot perform a full-time job that allows him to sit and stand at will because he does not sleep well at night. (*Id*.). Plaintiff can only walk one city block, he does not leave his home other than to walk to the convenience store once a month. *(Id.).* He lives in an apartment in his daughter's back yard and she buys him groceries and takes him to medical appointments. *(Id.).* He warms up TV dinners

and makes sandwiches, does small loads of laundry at his daughter's house and watches television five or six hours a day and checks his email on his computer. *(Id.)*. He has not been treated at the emergency room for any of his symptoms. (*Id.*). The ALJ noted that he did not find plaintiff's allegations of severity, frequency, and intensity of his symptoms fully credible. (*Id.*).

The ALJ then addressed the medical record evidence, summarizing the examinations and treatments plaintiff had received for his heart disease, shortness of breath, and bilateral knee pain. (Tr. 18-19). The ALJ found plaintiff's subjective complaints of chest pain and shortness of breath out of proportion to the medical record evidence, noting that he underwent stent placement in 2006, 2010, and 2011 (with no heart treatment between January 2006 and September 2010); a stress myocardial perfusion scan in September 2010 which showed no evidence of stress-induced ischemia, and an ejection fraction of 54%, but which revealed an inferior myocardial infarction and very poor treadmill performance. (Tr. 18). In August 2011, plaintiff had an ejection fraction of 70% with no evidence of restenosis. (*Id.*). On February 7, 2012, Marc Moreau, M.D. of the Amarillo Heart Group, noted that plaintiff's last cardiac catheterization was in August 2011, and there was no evidence of restenosis, and opined that plaintiff's clinical condition had stayed the same since that time. (*Id.*).

The ALJ next summarized plaintiff's treatment for shortness of breath, noting he underwent pulmonary function testing on September 28, 2010 which revealed normal spirometry. (Tr. 18). Following continued complaints of shortness of breath, plaintiff underwent pulmonary function testing on November 30, 2011 which revealed moderate obstructive airway disease, a post-broncho-dilator FVC of 4.00 (73% of the predicted value) and a post-bronchodilator FEV1 of 2.98 (70% of the predicted value). (*Id.*). The ALJ noted plaintiff continued to smoke. (*Id.*).

The ALJ next addressed plaintiff's history of bilateral knee pain, noting he was treated by Dr. Douglas Hyde on November 18, 2010 for complaints of progressive *left* knee pain, where X-rays revealed tricompartmental osteoarthritis. (Tr. 18). On March 10, 2011, plaintiff underwent total left knee arthroplasty. On May 6, 2011, Dr. Hyde noted plaintiff had full extension and flexion of the left knee and released plaintiff from orthopedic care. (*Id.*). On February 23, 2012, plaintiff was again treated by Dr. Hyde, but for complaints of *right* knee pain. X-rays revealed moderately advanced osteoarthritis of the right knee. (*Id.*). On May 10, 2012, plaintiff underwent total right knee arthroplasty. (*Id.*). The ALJ noted plaintiff's recovery time from the knee replacement surgeries did not meet the 12-month durational requirements listed in 20 CFR 404.1509 and 416.909. (Tr. 19). The ALJ discussed plaintiff's ability to ambulate, explaining that plaintiff testified he was able to walk one city block with a cane.[1] The ALJ again referenced Dr. Hyde's May 2011 note after the left knee replacement surgery that plaintiff had full extension and flexion of the left knee and releasing him from orthopedic care. (*Id*). The ALJ further found that although plaintiff testified he has arthritis in his hands and pain in his hips, there are no treatment records to support those complaints. (*Id.*)

### B. *Substantial Evidence Supports the ALJ's RFC Determination*

Plaintiff claims no medical opinion supports the ALJ's RFC assessment of light work, and that the State agency medical consultant's opinion, dated June 23, 2011, did not consider over 200 pages of medical records spanning over a year. (Pl. Br. at 13-15). Plaintiff further contends the ALJ erred by not ordering a consultative examination and medical expert testimony, rather than basing

---

[1] Plaintiff's testimony was that he could walk a block without a cane, but that it was a struggle and/or a hassle. (Tr. 38-39).

his RFC assessment on "lay opinion." (Pl. Br. at 15).

The ALJ determined plaintiff's residual functional capacity was that he could perform light work with additional limitations, including the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. (Tr. 16). The ALJ found plaintiff required the option to sit or stand; could occasionally stoop, kneel, crouch, and crawl; could not climb ladders, ropes, or scaffolds; required an indoor, temperature-controlled work environment; could have no concentrated exposure to dust, fumes, or chemicals; and could not work around dangerous moving machinery or at unprotected heights. (*Id*.). In explaining this RFC, the ALJ stated he had considered the objective findings on the claimant's physical examinations, the credible evidence, and had "[given] the claimant the benefit of all doubt as to his subjective complaints." (Tr. 19). After limiting plaintiff to a "restricted range of light work," the ALJ further explained, "I have provided postural limitations, as well as sitting and standing limitations, which are specific to [claimant's] symptoms, particularly his knee pain. The medical evidence, when considered in the light most favorable to the claimant, does not warrant further limitations." (*Id.*).

> Light work is defined by the Social Security Administration as work which:
>
> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b).

Plaintiff argues the ALJ's residual functional capacity (RFC) was not supported by substantial evidence of record and that the ALJ should have ordered a consultative examination. The

Commissioner contends the ALJ did not commit reversible error by not ordering a consultative examination or requesting medical expert testimony, arguing that although an ALJ should usually "request a medical source statement describing the types of work that the applicant is still capable of performing, the absence of such a statement does not, in itself, make the record incomplete." *Ripley v. Chater*, 67 F.3d 552, at 557 (5th Cir. 1995). "In a situation such as the present one, where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." *Id.* Bearing that in mind, and weighing the *Wren* factors, the Court concludes there *was* substantial evidence supporting the ALJ's RFC determination. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

As discussed by the ALJ, the objective medical evidence indicates plaintiff has suffered from arteriosclerotic heart disease and moderate pulmonary obstructive airway disease, as well as bilateral knee pain. The question is whether plaintiff is capable of performing light-level work, with the additional restrictions listed by the ALJ, despite those conditions and despite the pain and shortness of breath associated with them. That question was answered affirmatively by Dr. Craig Billinghurst, M.D., the State agency medical consultant, who concluded plaintiff was capable of performing activities consistent with light-level work.[2] (Tr 283-90). Dr. Billinghurst made his determinations with specific reference to plaintiff's history of arteriosclerotic heart disease with several interventions and osteoarthritis of the knees and the X-rays and tests verifying plaintiff suffers from the diseases. (Tr. 290). The "sit/stand option" which the ALJ included in the RFC determination is not found in Dr. Billinghurst's conclusions, rather the ALJ stated that the additional restrictions

---

[2] Dr. Billinghurst found plaintiff capable of occasionally lifting twenty pounds, frequently lifting ten pounds, and standing, walking, and/or sitting for about six hours in an eight-hour workday. (Tr. 284). He indicated plaintiff had certain postural limitations, i.e., he limited plaintiff's climbing ladder/rope/scaffolds to occasional. (*Id.* 285). He did not impose any additional limitations on plaintiff. (*Id.* 401-03).

were based on the other evidence discussed in his opinion. (Tr. 19).

Plaintiff has not identified any medical findings conflicting with Dr. Billinghurst's conclusions.[3] There is no finding by any medical provider indicating plaintiff is not capable of working due to his knees or his heart problem. The range of motion tests do not reveal any limitations in plaintiff's movement. The only conflict in the record is between plaintiff's statements that he is unable to work due to the pain in his knees, heart problems, COPD, and arthritis in his hands, and Dr. Billinghurst's determinations to the contrary.

After reviewing plaintiff's medical evidence, the ALJ found, "the claimant's subjective complaints of chest pain and shortness of breath are out of proportion to the objective medical evidence," and "there is no evidence he has difficulty ambulating." (Tr. 18). The ALJ also found "there are no treatment records to support" plaintiff's complaints of arthritis in his hands and pain in his hips. (*Id.*). While this finding appears to conflict with the ALJ's statement that he gave all benefit of the doubt to plaintiff's subjective complaints, the determination was still within the ALJ's discretion, *see Hollis*, 837 F.2d at 1387, and plaintiff has not shown the ALJ's determination was an abuse of discretion. *See id*.

Moreover, it was within the discretion of the ALJ to accept the objective medical evidence and opinions of treating and examining physicians over plaintiff's subjective complaints. *See Laffoon*, 558 F.2d at 254. Because the RFC determination plaintiff challenges has evidentiary support in the form of objective medical tests and due to the lack of diagnoses and opinions of

---

[3] To demonstrate that he cannot stand or walk six hours in an eight-hour work day, as required for light work, plaintiff recites his testimony and medical evidence <u>prior</u> to his knee replacements, placing special emphasis on a note by Dr. Hyde during his first consultation on November 18, 2010 wherein Dr. Hyde opined that plaintiff had a poor long term prognosis and "would be considered a low-mileage patient both in the amount of miles he has left and the amount of miles he would put on to a prosthetic joint." (Pl. Br. at 8-13, Tr. 199). Subsequent to that report, however, Dr. Hyde performed a successful replacement of plaintiff's left knee.

treating and examining physicians to the contrary, the ALJ's enunciated reasons for denying plaintiff benefits, despite his subjective complaints of pain and disability in his knees, indicate the ALJ did not abuse his discretion. To be substantial, the evidence only needs to be adequate to support the conclusion, it need not be by a preponderance. *See Wren*, 925 F.2d at 126; *Anderson*, 887 F.2d at 633. Further, plaintiff, while identifying 200 pages plus of medical records he contends were not considered by the state agency doctor, has not cited any particular record he contends would have been of significance. The fact is that plaintiff's knees were not the subject of any treatment from May 2011, when plaintiff was released following his left knee replacement, until February 2012, when he reported his left knee was much better (Tr. 458), but his right knee was causing him pain. The right knee was then replaced in May 2012 and was reported to be near normal by June 2012. (Tr. 502-03).

Plaintiff next claims the ALJ erred in his credibility assessment of plaintiff when he failed to take into account plaintiff's 30-year history of consistent employment. (Pl. Br. at 15-16). The Commissioner argues "there is no indication that the ALJ did not consider Roberson's work history in making his credibility determination. Furthermore, the ALJ stated that, after careful consideration of the entire record, he made his decision." (Comm'r Br. at 11, citing Tr. 15).

This point of error has some validity. The Court agrees that the solid 30-year work history described in plaintiff's brief should have been a consideration in assessing credibility. Further, and to the extent it is possible to do from the cold record, plaintiff's testimony at the ALJ hearing appeared credible. Without going into detail, it did not appear plaintiff exaggerated his case. Plaintiff's testimony seemed very candid. For example, in describing his activities, plaintiff testified he could, albeit with difficulty, walk a city block occasionally. When the ALJ attempted to confirm

plaintiff's testimony and included the use of a cane, plaintiff corrected the ALJ stating he did not have to use a cane. (Tr. 38). Later, when asked if he had looked for work, plaintiff did not claim to be totally incapacitated but, instead, replied that he had read the ads in the paper to see if there was something he could do. (Tr. 44).

This Court's analysis of plaintiff's credibility, however, is of no benefit to plaintiff. Credibility determinations are reserved to the Commission and this Court may not reconsider those determinations *de novo* or substitute its judgment for the ALJ's. The fact that this Court may have come to a different conclusion than the ALJ does not invalidate the ALJ's determination that plaintiff's subjective complaints were less then credible due to the lack of objective medical evidence. Further, while it would have been better for the ALJ to acknowledge plaintiff's 30-year consistent work history, the failure to reference such in his findings does not mean he was not aware of the history. No reversible error has been shown.

### C. *The ALJ's Sit/Stand Determination was Proper*

Plaintiff next claims the ALJ's finding that he could perform other unskilled, light work with a sit/stand option, without enumerating the specific amount of time plaintiff must alternate between sitting and standing was improper as a matter of unambiguous Agency policy. (Pl. Br. at 17-19). In support of his claim, plaintiff cites SSR 96-9p[4], and SSR 83-12.[5] As the Commissioner points out, however, SSR 96-9p applies only to the need to specify the frequency of alternating sitting and

---

[4] SSR 96-9p: Policy Interpreting Ruling Titles II and XVI: Determining a Capability to Do Other Work – Implications of Residual Functional Capacity for Less than a Full Range of Sedentary Work. *See* 1996 WL 362208.

[5] SSR 83-12: Titles II and XVI: Capability to do Other Work – The Medical Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work. *See* 1983 WL 31253.

standing when considering the erosion of the occupational base of unskilled sedentary jobs. (Comm'r Br. at 12-13). Since the Court has found there is sufficient evidence to support the ALJ's RFC determination that plaintiff can perform a limited range of light work with limitations and a sit/stand option, sedentary work is not at issue and plaintiff's reliance on SSR 96-9p is unfounded.

Plaintiff's reliance on SSR 83-12 is also misplaced. As explained in the Commissioner's response, plaintiff cited only a portion of SSR 83-12 and failed to acknowledge the language which followed concerning the role of vocational expert consultation in the ALJ's deliberations. The Alternate Sitting and Standing provision of SSR 83-12 states:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. <u>Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.</u>

(emphasis added). The Fifth Circuit has ruled that an ALJ may properly rely on a vocational expert's testimony, considering that allowing for alternating between sitting and standing is "a prevalent accommodation in the workplace." *Jones v. Apfel*, 174 F.3d 692, 694 (5th Cir. 1999). Moreover, SSR 83-12 does not say that a sit/stand option is inconsistent with all light work. Instead, it

recommends that, where there is an "unusual limitation of ability to sit and stand," a vocational specialist be consulted "to clarify the implications for the occupational base." Here, the ALJ did exactly that, and the vocational expert testified to several "light" work jobs that plaintiff could do despite the sit/stand limitations.

### D. *Borderline Age Situation*

Plaintiff next argues the ALJ's RFC determination was improper because a borderline age situation existed and a finding of "disabled" would have been directed by the Medical Vocational Guidelines if plaintiff had been limited to sedentary work. (Pl. Br. at 20). On August 2, 2012, the date the ALJ's decision was issued, plaintiff was four months shy of his 50th birthday. (Tr. 10, 140). However, plaintiff's argument fails because the Court has found that substantial evidence supports the ALJ's finding that plaintiff could perform a limited range of *light* work with a sit/stand option – not sedentary work. The ALJ used 20 C.F.R. Part 404, Subpt. P., App. 2 § 202.21 as a guideline to make his step five finding (Tr. 20); as a younger individual (age 18-49), with a high school education and non-transferable experience for skilled or semi-skilled past relevant work, is not disabled at the light work level. Even if plaintiff was closely approaching advanced age (age 50-54), 20 C.F.R. Part 404, Subpt. P, App. 2 § 202.14 would still direct a finding of "not disabled." Because plaintiff's claim relies on a finding that he was restricted to sedentary work, it relies on an inapplicable Grid. This claim is without merit.

### E. *Failure to inquire of the vocational expert whether her testimony conflicted with the Dictionary of Occupational Titles (DOT)*

Plaintiff's last claim is that the ALJ erred when he relied on the vocational expert's (VE) testimony to deny his claim at step 5 because the ALJ failed to inquire of the VE, as required by SSR

00-4p, whether her testimony was consistent with the Dictionary of Occupational Titles (DOT). Plaintiff asserts the VE's testimony was in conflict with the DOT, because the DOT does not address a sit/stand option. (Pl. Br. at 24-27). The Commissioner concedes the ALJ did not comply with the requirements of SSR 00-4p and ask the VE if her testimony conflicted with the DOT, but disagrees that SSR 00-4p should apply to the case at hand. (Comm'r Br. at 15). The Commissioner contends that even if the Court were to apply SSR 00-4p in this case, there is no conflict as demonstrated by the record because, as plaintiff concedes, the DOT is silent with respect to a sit/stand option. (*Id*.). The Commissioner further argues that procedural perfection is not required, and the judgment should not be vacated because the substantial rights of plaintiff have not been affected. (*Id*. at 15-16, citing *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989)). Finally, the Commissioner contends any error by the ALJ in not asking the VE if her testimony conflicted with the DOT was at most harmless, because there was no conflict to resolve. (Comm'r Br. at 16).

The Court has previously discussed the definition of light work in 20 C.F.R. § 404.2567(b), as well as the special comments issued by the Social Security Administration in SSR 83-12 (providing guidance on the topic of jobs at which a person can choose to either sit or stand at will). Under this ground plaintiff appears to assert the ALJ's RFC determination, which limited plaintiff to working jobs where he has the option to either sit or stand, is inconsistent with the determination plaintiff was capable of performing the light, unskilled jobs identified by the VE because the DOT for those jobs is in conflict with plaintiff's RFC.

At the hearing, the following transpired between the VE and ALJ:

ALJ:   I'm going to ask you to consider a person of the same age, education, and work history, with the ability for light work. We need a sit/stand option. As far as posturals, occasionally stooping, kneeling, crouching and crawling . . . . Would there be any jobs?

>   VE:   Yes, there would be jobs at the light level, unskilled like assembly and production, 130,000 nationally. Inspector, 140,000 nationally. Packager positions, 137,000 nationally and 2,500 in Texas.

(Tr. 47-48).

The ALJ relied upon the services of a VE in identifying jobs within plaintiff's RFC. *Cf. Fields v. Bowen*, 805 F.2d 1168, 1170-71 (5th Cir. 1986). As the Fifth Circuit has stated, "[t]he value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed" in the performance of jobs. *Id.* at 1170. The Court gives the VE's testimony a good deal of deference, recognizing not only that the VE is the expert in job requirements but also that the Court's task is to evaluate whether the Commissioner's determination is supported by substantial evidence, not to reweigh the evidence or try the issues *de novo*. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The VE testified the jobs she determined a person like plaintiff could perform allowed for the worker to have a "sit/stand" option, *i.e.*, to alternate sitting and standing. The ALJ is not only able to rely on the testimony of a VE in matters of specific job requirements and options but, when the RFC contains limitations beyond those set forth in the Code of Federal Regulations, the ALJ *must* rely on VE testimony. *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). The ALJ did not commit error by relying on the VE's testimony under the facts of this case.

Further, it is not clear any actual conflict exists. The VE is the witness responsible for knowing and applying the DOT and is the expert in job requirements. *See id.* (stating "the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job"). While it is true that the DOT descriptions do not include a sit/stand option, it is also

true that none of the job descriptions exclude such an option. Stated differently, plaintiff has not presented anything showing the DOT's job descriptions is in conflict with the VE's testimony.

Giving plaintiff the benefit of the doubt and assuming *arguendo* that there is some degree of implied conflict between the VE's testimony and the DOT, the Court, following *Carey*, does not remand for such a conflict. The Fifth Circuit has expressly held that "[t]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey*, 230 F.3d at 146. There is nothing calling into question the expert status of the VE, and the RFC the ALJ presented to the VE was based upon substantial evidence. The ALJ's reliance on the VE's testimony was not error, even if there arguably was an implied conflict between the VE's testimony and the DOT. *See id*. The VE's unchallenged testimony that plaintiff would have an option to either sit or stand in the listed jobs is adequate evidence, in the context of the record as a whole, to support the ALJ's determination that plaintiff could perform other available work. *See id.* at 146-47.

## V.
## RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff BILLY DON ROBERSON not disabled and not entitled to disability benefits be AFFIRMED.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this   5th   day of March 2015.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).